The next case, number 221296, Philadelphia Indemnity Insurance Company v. BAS Holding Corporation. At this time, would Attorney Riley please introduce himself on the record? Good afternoon. Chris Riley for BAS Holding Corporation. If I could save four minutes for rebuttal time. How long did you want? Four. Okay. The sole issue, there's no memorandum or decision in this case, but from the transcript, the sole issue that Judge Young ruled on was the compliance with the policy's examination under oath condition. The timeline here, there's a claim of fire set by an arsonist who set fires to a number of buildings in Brockton. I understand he's been arrested at this point. On March 17th, the claim was timely reported that same day. It took a month for the insurer to give a reservation or rights letter. Nothing further happened until the policyholder demanded reference on May 27th of 2021. After that, there was a demand for an examination under oath by the carrier on June 16th. The examination under oath happened. Sue Rodrigues appeared on August 3rd, provided testimony, answered all the questions asked of her. There was no objection or refusal to answer any questions, even questions that were beyond the scope of what had been identified in the EO notice. The next day, there was an email from the counsel for the insurer seeking to take six additional examinations under oath. Five were for individuals who are not employees or agents, or I should say employees or officers of the insured, and one for the president of BAS Holding Corp. On August 9th, so five days after that, I wrote a letter that said- Counsel, again, I think we're familiar with the history. I gather it's your position that although you were concerned about this request demand to examine under oath six other individuals, including the president of the company, that you never categorically refused to meet that request. I gather it's your position you wanted a justification for it. It seemed out of the norm to you. It verged on the unreasonable from your point of view. And so you said, okay, we want to know more about it. We know why you want to meet it. But this record will not indicate that your client ever categorically refused to do this. Is that correct? That's correct, Your Honor. And the letter is the August 9th letter, and that letter twice says, notwithstanding our objections, if you provide us information about why it's reasonably required and why you think you're entitled to take these, we'll consider that and respond further. And in its brief bench decision, the district court focused on Mr. Carney. That was what troubled him. I gather it's your position that even with respect to Mr. Carney, you never said we're not going to make him available. Absolutely. Is that correct? That's correct, Your Honor. We got the letter on August 10th saying, please confirm we're going to go forward with Mr. Carney on August 19th and confirm we're going forward with the other five individuals on August 20th or multiple dates after that. We were doing what we said we were going to do. We were considering their response. And then we get a denial of the claim before we had said we're not showing up for that deposition or the EEO or before the date passed. So that's exactly correct. So they, I'm not sure I have this right, they indicated that they wanted to know whether this person would be available within two weeks. Is that correct? But then three days later after making this two-week time frame, after indicating this two-week time frame, they decided that because of the willful and inexcusable refusal to provide the insured for deposition, they said that coverage is denied. Is that correct? Well, yes, Your Honor. And actually, one of the things that troubles me is they denied the claim on coverage grounds as well. They denied the claim saying this building is not entitled to coverage. And my understanding was they were saying they needed these EEOs of these other individuals because they didn't have enough information to make a coverage determination. So on the one hand, they're trying to say we need you to come in for six additional EEOs because we don't have enough information to make a coverage decision. And on the other hand, they're saying your claim is denied. But going back to Your Honor's point, yes, it was August 10th, they asked us to confirm that Mr. Carney's deposition would go forward on August 19th and that the other depositions would go forward on August 20th and then denied the claim on August 13th. How practically is this supposed to work? The idea is that there's some point at which it becomes clear there's not going to be cooperation. And if there is a requirement to appear saying, well, if you give me a good enough reason, maybe I'll consider appearing. You can't do that forever, right? Correct. And if you look at the cases, and I think that's what we focus on in the cases, and when I've done work on the insurance company side, you say, we want an examination under oath on this date. And if someone comes back and says, we're not going to show up, we don't think we have to show up, then you as an insurance company say, either we think you're wrong and we're going to meet on this date and have the EEO and the person shows up or they don't. You go on the record, you say they didn't show up, and then that's generally how it works. And in every case that's cited by both parties, there is, at a minimum, a few weeks after that initial request for an examination under oath. And there is, most of the time, the date comes and goes before you have a refusal to appear. So practically, an insured can get the benefit of the doubt and say, we're going to, on August 18th, they can say, actually, we will show up, and then they can conduct the examination under oath. But it is not, you know, this is an area where there were notices, requests that take it in the future, no categorical. But was there any indication, absent response, that Carney would show up? What do you mean by that, Your Honor? Just what I said. Was there any indication absent response? Yeah, I think I understand. No, the indication would have been a response from my office saying, Mr. Carney will appear on August 19th. And that could have occurred on August... No, no, what I'm saying, isn't the, from the insurer's perspective, what was being communicated was, we're not showing unless you give us a reason for us to show. Correct. Well, no, I think... But that's a big, I mean, let's put it this way. Suppose the record could be read to say, I'm not showing unless you give me a reason to show. Yep. At that point, do you have to give a reason in order to be able to exercise your rights to say, I'm going to deny the claim because you're not showing? Well, a few things, Your Honor. First, this is on summary judgment. So if you're saying, if a finder of fact could determine that that's what our correspondent said, that's a trial issue. I would say that's not a summary judgment issue if it could be determined either way. The letter says, we're objecting for these reasons. In the absence of you providing these reasons, we can't be compelled to appear. But that is different from saying, we are not going to appear unless you provide those reasons. And then separately, they did provide a response, which gave the information. They said, we want to take these five people. We think we're entitled to take them, even though they're not employees, because they have relevant information. We need further information to evaluate the claim. And Mr. Carney is the president. Please confirm that we're going forward. And what was the response to that? There was a denial before there was any response to that, Your Honor. And I think that's our main contention. And was there a deadline given for the response? I believe the letter said, please confirm immediately. And then how long passed after that, three days? Less than three days, yes, Your Honor. That is the record, Your Honor. So are you saying, tell me what you're saying is the problem here. Is it just a factual point about whether those facts suggested that it was clear that he was not going to appear? There's, I would say, three layers, Your Honor. First, I would say that those facts establish as a matter of law that there wasn't a willful refusal to comply. Why is that? Because there is a, the policy doesn't say you have to confirm immediately. The policy doesn't say you have to give an answer. Correct, correct. And so I would say that. No, the policy doesn't say that the insurer has to give an answer to the insured's request for an explanation about why he has to appear. Correct, Your Honor. So what I would say is the first, as a matter of law, you can't refuse to comply with an examination under oath condition until you either say we are not coming to the examination under oath or the examination under oath happens and passes. But what about if, but here what I'm asking about is it seems like what the insured said is I'm going to, I will consider appearing once I hear your reasons for having me appear. Yes, well, that is correct, Your Honor. But recall also we had already complied. An EEO had already occurred. Not with Carney. Not with Carney, but with the EEO. With somebody who said they couldn't answer anything. Well, and the briefs, we dispute that too. The two issues which Mr. I'm just on the matter of law point in your favor. I'm just trying to figure out why this record could support a conclusion that as a matter of law this can't be enough. So there's two reasons. The first is the policy says we can take an examination under oath of the insured as often as reasonably required. They took an examination under oath. They asked to take six additional ones. We stated our objections and said notwithstanding this, if you respond further, we'll consider it. We never said we're not going to appear. And in the absence, I would say the matter of law issue is you can't fail to comply with a request for examination under oath before that examination under oath passes unless you explicitly say we're not coming for the examination under oath. So that would be my position. Second on the matter of law issue is the issue of whether they're entitled to, and I see I'm running low on time, but whether they could demand those examinations under oath. And that's briefed, but essentially the five people are not the insureds, and there are policies that say we can take an examination under oath of the insured or any agent, employee, representative. That's not what this policy says. Counsel, let me, if we were to conclude that Judge Young got it wrong, that there was not a basis for denying coverage because of this willful and inexcusable refusal to make the insured available, what would happen on remand? Are you suggesting that, I mean, I realize there are all sorts of other grounds that are asserted. Forget that. Just on this issue, are you suggesting that we should take this issue out of the case and say that on this record, the insurance company is not entitled to deny coverage because there's been a contractual breach and they cannot rely on this obligation of the insured to present for an examination under oath. That issue is gone. So now all the other issues of coverage or non-coverage should be addressed. Should that be the posture of the case? Well, Your Honor, I think what we've asked, I believe that three of the issues, whether the state building is covered. But that, Judge Young, he didn't address any of that. Exactly. So in the absence of this court exercising its discretion, I think it should be remanded and briefed on the remaining what both parties believe are legal issues of coverage, which are whether the state building is covered, whether vacancy and occupancy exclusion applies, whether the coinsurance condition applies, and whether the ordinance or law coverage applies. So I think it would be, yes, take the examination under oath issue, remand back to the district court, and we would rebrief those issues and Judge Young would decide whether there's questions. You know, vacancy tends to have factual questions and he would issue another decision and then we'd either proceed to a trial on the remaining non-legal issues or, if necessary, we'd come back here.  Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good afternoon, Your Honor. I'm Alexander Henlon. I represent Philadelphia Indemnity Insurance Company. We are here to ask you to summarily affirm Judge Young's judgment in favor of PIIC. Massachusetts law supplies the controlling rule of decision in this case, as this court recognized in Miles, Mello, and Cape Cod Custom Home Theater. Elaborate upon the requirements. And the record amply demonstrates the history of the E.U.O. noncompliance, which is the solution. Counsel, I have to say, it seems to me that, arguably, if we were to affirm this decision, this would be a real outlier in terms of Massachusetts cases that address this issue. I mean, the time period here is much more compressed than those other cases. There, the refusal to appear went on for long periods of time. There was suspicion of fraud in those cases. I mean, the conduct in those other cases was arguably egregious. Here, we don't seem to have anything like that. This is a very compressed time period. You don't have a categorical refusal to appear. There's no suggestion of fraud. There are serious coverage issues, for sure, but there's no suggestion of fraud here. So your suggestion that this case is within the mainstream of the precedent seems very difficult to defend. Your Honor, respectfully, I disagree. The E.U.O. of Sue Rodricks, wherein 48 times she responded, I do not know, when asked what building was insured, what was in it, how it was used, and whether it qualified for coverage, and identified George Kearney as the individual who would know as the sole officer, was repeated and clear. The following day, a written request issued to ask Mr. Kearney to appear for examination, enumerating the reasons that's in the record. Four days later, Attorney Riley responded in writing with a lengthy statement saying, you're not entitled to ask Mr. Kearney to appear. He's 92 years old. He will not appear. And the following day, a further letter went out explaining why the information that he had was clear and apparent. Three days later, not receiving any response, and contrary to the course of dealing in the history of this litigation, I think a disclaimer was warranted. The opposing view that is being urged is Philadelphia should have called a court reporter, shown up on its own, noted the default on the record, and then disclaimed. Interestingly, BAS made no effort to cure its contumacious refusal to appear once the decision to disclaim had been issued. There was never a letter issued, and it is nowhere in the record because it does not exist, saying, oh, well, we've read your letter of the 10th. We would have shown up, reconsider, we'll produce him on such and such a date. There wasn't even an offer to produce Mr. Kearney in response to reasonable accommodations. That is in the record. That is the correspondence of August 9 and August 10. Respectfully, Judge, I believe that this would be well within the mainstream of Mellow, Cape Cod Custom Home Theater, and this Court's own decision in Miles. You made a statement that there was a letter that you received early on from your opponent that said, with respect to Kearney, he will not appear. Is that a direct quote? It is not a direct quote, Your Honor. The quote that I would put on it is the letter dated August 9. It is in the record, and I will find the page citation if you would like. But I believe it is in our brief. It says, you have no right to demand that he appear. But then, looking at August 9, notwithstanding this, if Philadelphia identifies the factual basis for his reservation of rights and provides a proper explanation for why a further examination under oath is reasonably required, BAS will consider such requests and respond further. They've got problems with this. They question whether you're entitled to these further examinations. But you give us some more reasoning, and we'll consider it. Your Honor, you heard from Attorney Riley here before me that a reservation of rights letter had issued very shortly after this presentation of the claim. Moreover, the reasoning was further elaborated certainly no later than August 10. There were other correspondences dated August 4, wherein the basis of the reservations were, you know, elaborated, pointing out the doubt about whether the building was insured, if it was vacant, and how it was used. Those grounds, respectfully, I think it is subterfuge. As Judge Barron was pointing out in the questions he presented earlier on, at some point, the elevation of form over substance becomes a bit of a dodge. And the reality is this was a heavily litigated, contested, acrimonious claim process, where the parties were writing back and forth almost on a daily basis, certainly no more than two or three days between time. That is what the record supports. Is the question here then a fact question about whether all dealing had stopped, essentially, or is it a purely legal question? Because even if we thought this is not, as a matter of law, a record that's incapable of supporting your position, you want us to say, as a matter of law, the record requires your position. And the intermediate position would be, isn't that just a fact question? A jury could decide whether dealing had stopped or not. Your Honor, I don't believe that it is. I believe that what happened and what the record supports in this case is akin to anticipatory repudiation. It's a clear statement that the witness will not be produced, because BAS's position was that they had produced Susan Rodericks, who, I will concede, answered all of the questions presented to her to the best of her ability, but she was not a BAS employee. She ultimately admitted that she did not have knowledge on all eight of the issues for which she was produced. And when these concerns were raised with BAS, the response was, you've already had your EUO. We get to choose who you get to interview. Your rights to talk to the insured are matters for us to decide. And thereafter, Philadelphia made the decision to disclaim coverage. Counsel, what in this record supports what I take it to be Judge Young's conclusion? He says he's concerned with Mr. Carney. He's very explicit about that. And he seems to take the view that BAS has categorically, has made clear categorically that they will not make him available for this examination under oath. What in the record supports what appears to be that decisive determination? I will concede that the five maintenance individuals really are beside the point. The key point is George Carney. Right. And the letter of August 9th over Attorney Riley's signature that is in the record, when it addresses Mr. Carney's production, which I believe is on the third page, and I apologize if I'm missing that here as I'm presenting it to you, says you're not entitled to ask for him to appear. He's 92, implying it would be a hardship. And in so many words, saying he's not going to show up. As to everyone else, come talk to us, but that's what you have. I also point out to the trustee. But I guess that's the in so many words, I mean, doesn't that make it a fact question? Respectfully, Your Honor, I don't believe so, because the controlling authority in Cape Cod Custom Home Theater, in Miles, where Mr. Baxter was interviewed, where the policyholder was interviewed, even in Mellow, simply supports the proposition that these individuals by not answering questions, by playing games with the carrier, forfeited coverage. And that is the rule. Unless Your Honors have any further questions, I have nothing further and will yield back the balance of my time. We ask that you affirm the district court. Thank you. Thank you, counsel. At this time, would the appellant please introduce himself on the record for his rebuttal? He has four minutes. Your Honors, Chris Riley. The letter does not say that Mr. Carney will not appear. That's not what the letter says, and it's in the record. In the briefs, they were suggesting that there was a denial on August 4th that we responded and said we're not going to appear, and then we denied again on August 9th. You didn't hear that today because that's not what the record says. The record also doesn't support a contention. Initially you heard that my letter said Mr. Carney is not going to appear, and then you heard that in so many words it said he's not going to appear. What happened was we had an EEO, we got a request for six additional EEOs the next day. I believe that they're not entitled to request those individuals. I expressed that objection. Then we got the correspondence the following day asking us to confirm that we'd go forward on the 19th with Mr. Carney and the 20th with the other people. We never responded. We had responded at all to all correspondence. We had produced over 700 documents. There's no history of non-cooperation. Finally, counsel here said that I had mentioned the ROR shortly after the claim was reported. My point in mentioning that was the claim was March 17th. Their ROR is April 20th. We don't hear anything else for another month until the insured demands reference. So their communications in these were taking months or weeks, and then we get a denial for not responding in three days. Counsel, just to be clear, so it's your position that, as Judge Barron was suggesting, that there may be a factual issue still to be resolved by a jury as to whether there was this willful and inexcusable refusal to comply with the contractual obligation. You're not suggesting that we should take that issue, or maybe you are. I am, Your Honor. We should take it out of the case and say, there's no way on this record that they can justify denying coverage on that contractual breach basis. I am for two separate reasons, and then my tertiary argument is that if those reasons are incorrect, we still have to have a trial. First reason is you can't have a failure to comply with an EO condition when there's not a categorical refusal to attend, if we're talking before the date, or the date comes and goes and you don't attend. Otherwise, you haven't willfully refused, and the cases, every case cited bears that out. And also the suggestion that it's somehow a burden to have an insurer, have a court reporter show up for an EO, it happens all the time, and in the cases that we talked about, that's what happens. If you don't get a response, or someone says, I'm not coming, the carrier gets a court reporter, goes on the record, and says they didn't show up. So here, in the absence of a categorical refusal to say, we are not coming to an EO, or the date of the EO coming and passing, I would say as a matter of law, there's no breach of the EO condition. The second matter of law issue is whether they're entitled to demand it. I've heard today, I think essentially a waiver as to the five non-employees. With Mr. Carney, I don't think they had a right to demand any specific individual, and they drafted the policy. If they wanted to write a policy that said we can take an EO of the insured, or an agent, or an employee, or an officer, there are policies in case law all over that discuss those policies. Who could they ask, in your view? They can ask for an examination under oath of the insured. And there are three corporate insureds and two additional insureds. And how does that work? Because insureds that are corporations don't speak. That's true. That's true. And, again, it's a policy they drafted. So you think they just can't enforce it? Is that what you're really saying? Absolutely not. No. If we said, if when they said, we want you to come on August 3rd for an EO, and we said, no, go pound sand, we breached the EO. So you just put your position, but you can't ask for any particular agent? Correct. And do you have to provide any agent at all? You have to come and answer the EO. You have to appear and provide testimony. As any agent of your choosing? Correct, Your Honor. Correct. And if a further EO is reasonably required, they can ask for another EO. Thank you. But that's the second issue. And then if those two issues are incorrect, a matter of laws, Chief Justice Barron. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.